FILED
2013 Jul-18 PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | Case No.  2:11-cv-03409-HGD |
| JO-ROB, LLC, | ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge on the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by defendant Jo-Rob, LLC.  (Doc. 46).[1]  The parties have submitted briefs and evidentiary submissions.  The matter is now ready for disposition.

---

[1] Defendant Jo-Rob, LLC, initially filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, in response to plaintiff's original complaint. (Doc. 31).  After plaintiff filed an amended complaint, Jo-Rob filed the Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 46), which incorporates defendant's previous Motion to Dismiss.  (*Id.* at ¶ 4).

## SUMMARY JUDGMENT STANDARD

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment is due to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in her favor. *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the movant can meet its burden of coming forward with sufficient evidence as to each material element of its claim sufficient to permit a reasonable jury to find in its favor.

## FACTUAL BACKGROUND

Plaintiff Slep-Tone Entertainment Corporation (Slep-Tone) is a U.S. manufacturer of karaoke accompaniment tracks, with its principal place of business

in Charlotte, North Carolina. (Doc. 43, Amended Complaint, at ¶¶ 6, 20).[2] Defendant Sherry Ehley is an individual engaged in the business of providing karaoke entertainment in Pelham, Alabama. (*Id.* at ¶ 7). Defendant Chance Smith is an individual engaged in the business of providing karaoke entertainment as "Rock 'N' Roll by Chance." (*Id.* at ¶ 8). Mr. Smith's principal business address is in Jefferson County, Alabama, and he conducts his business activities in multiple venues in Alabama. (*Id.*). Defendant Matthew Shaw is an individual engaged in the business of providing karaoke entertainment in Jefferson County, Alabama. (*Id.* at ¶ 9). Defendant Lynn Bates is an individual engaged in the business of providing karaoke entertainment in Jefferson County, Alabama. (*Id.* at ¶ 10). Defendant Andrew Bates is an individual engaged in the business of providing karaoke entertainment in Jefferson County, Alabama. (*Id.* at ¶ 11). Defendant Johnny Drummond is an individual engaged in the business of providing karaoke entertainment in Jefferson County, Alabama, as well as other venues in the State. (*Id.* at ¶ 12). Defendant Gary Jackson is an individual engaged in the business of providing karaoke entertainment in Jefferson County, Alabama, as well as other venues in the State. (*Id.* at ¶ 13). Defendant Michael Leonard is an individual engaged in the business of providing

---

[2] While the claims of plaintiff against Jo-Rob have been severed from the claims against other defendants, a summary of plaintiff's allegations is offered for factual background.

karaoke entertainment as "The Karaoke Kid." (*Id.* at ¶ 14). Mr. Leonard conducts his business activities in Jefferson County, Alabama, as well as other venues in the State. (*Id.* at ¶14). Defendant Phil Harris is an individual engaged in the business of providing karaoke entertainment in St. Clair County, Alabama. (*Id.* at ¶ 15). Defendant Dry Riders, L.L.C., is an Alabama limited liability company doing business as "Dry Riders Saloon" located in St. Clair County, Alabama.[3] (*Id.* at ¶ 16). Dry Riders, L.L.C., owns and arranges for the operation of a karaoke system that provides entertainment to patrons of Dry Riders Saloon. (*Id.* at ¶ 16). Defendant LT, LLC, is an Alabama limited liability company doing business as "Central Club" located in Jefferson County, Alabama. (*Id.* at ¶ 17). LT, LLC, owns and arranges for the operation of a karaoke system that provides entertainment to patrons of Central Club. (*Id.* at ¶ 17). Defendant Jo-Rob, LLC (Jo-Rob) is an Alabama limited liability company registered in Jefferson County, Alabama, and has places of business in Jefferson County, Alabama, and Shelby County, Alabama. (*Id.* at ¶ 18). Jo-Rob owns and operates multiple establishments known as "Starz Karaoke Lounge," and at each location one or more karaoke systems provide entertainment to patrons of Starz Karaoke Lounge. (*Id.*).

---

[3] The amended complaint states that Dry Riders L.L.C., is, "upon information and belief," a limited liability company in Alabama. (Doc. 43, Amended Complaint, at ¶ 16).

Slep-Tone is the owner of two registered trademarks,[4] one for the trademark Sound Choice and the other for the accompanying display trademark, the Sound Choice logo. (*Id.* at ¶¶ 53, 54). Since the marks have been federally registered, Slep-Tone has provided the public with notice of its federal registrations through consistent display of the symbol ® with its marks. (*Id.* at ¶ 55).

As previously mentioned, Slep-Tone manufactures and sells karaoke accompaniment tracks for commercial use. (*Id.* at ¶ 20). The manufacturing process includes re-recording popular songs without the lead vocals and synchronizing the music to a display of the lyrics that cue the performer as to what and when to sing. (*Id.* at ¶ 21). The tracks are sold on compact discs in one of two formats known as "CD+G" and "MP3G." (*Id.* at ¶ 22). The "G" in both formats refers to the encoding of the recording with graphical data that provides a synchronized video display of the lyrics to the song. (*Id.* at ¶ 22). The graphical data also marks the tracks with the Sound Choice logo which is displayed while the track plays. (*Id.* at ¶ 23). Slep-Tone also marks its compact discs and the associated packaging with the Sound Choice trademarks. (*Id.* at ¶ 24).

---

[4] Slep-Tone is the owner of U.S. Trademark Registration No. 1,923,448 for the trademark Sound Choice and U.S. Trademark Registration No. 2,000,725 for a display trademark, the Sound Choice logo. (Doc. 43, Amended Complaint, at ¶¶ 53, 54).

Entertainers who provide karaoke services in bars, restaurants or other venues are known as karaoke jockeys (KJs). *(Id.* at ¶ 25). Normally, KJs purchase karaoke equipment and purchase or license the compact discs containing accompaniment tracks that are used for their karaoke business. (*Id.* at ¶¶ 26, 27). However, some KJs copy compact discs containing accompaniment tracks to computer hard drives or other media; this is known as "media-shifting." (*Id.* at ¶ 28). Media shifting can also include converting the compact disc files to different formats, for example from CD+G to MP3G or WAV+G; this is known as "format-shifting." (*Id.* at ¶ 29). Both media-shifting and format-shifting involve the creation of copies of original Slep-Tone material stored on the compact discs. (*Id.* at ¶ 30).

Slep-Tone does not authorize media-shifting or format-shifting without prior consent, and only under specific conditions. (*Id.* at ¶¶ 32, 33). Slep-Tone's complaint alleges that each defendant is in possession of unauthorized media-shifted and/or format-shifted copies of karaoke accompaniment tracks. (*Id.* at ¶ 31). Slep-Tone and its affiliated companies pay royalties to the owners of copyright in the underlying songs that have been re-recorded for the accompaniment tracks. (*Id.* at ¶ 38). Plaintiff's complaint states that the defendants have made illegitimate commercial use of counterfeit Slep-Tone accompaniment tracks and, therefore, the underlying songs, without paying royalties to the owners of the copyright of those

songs. (*Id.* at ¶ 39). Slep-Tone also claims it is being denied the benefit of millions of dollars it has invested in producing karaoke versions of these songs because of widespread use of counterfeit copies of these compact discs. (*Id.* at ¶¶ 32, 33).

Slep-Tone's complaint claims that such widespread copying of music has contributed to the loss of more than 60 jobs, as well as several consecutive years of operating losses. (*Id.* at ¶ 46). Additionally, non-pirated KJs spend thousands of dollars acquiring Slep-Tone accompaniment tracks, while pirate KJs spend much less on the counterfeit copies of the tracks. (*Id.* at ¶¶ 47, 48). This allows the pirate KJs to provide karaoke entertainment at a significantly lower cost because of their lower overhead. (*Id.* at ¶ 48). Therefore, this piracy unfairly increases the profits of illegitimate KJs and decreases the profits of non-pirate KJs, forcing legitimate KJs to turn to piracy. (*Id.* at ¶ 49).

Slep-Tone has conducted an investigation into each defendant and alleges they possessed, used and displayed unauthorized counterfeit tracks bearing Sound Choice marks. (*Id.* at ¶¶ 56, 57). Each of the alleged acts of infringement are in a commercial setting where the defendants were paid for providing karaoke services. (*Id.* at ¶ 61). Slep-Tone further alleges that none of the defendants have submitted to and passed an audit of their karaoke systems for the purposes of verifying compliance with Slep-Tone's media-shifting policy. (*Id.* at ¶ 65). Additionally,

plaintiff argues that each of the defendants knew, or should have known under the circumstances, they obtained and were using counterfeit karaoke tracks. (*Id.* at ¶ 68).

## DISCUSSION

### I. Defendant Jo-Rob's Motion for Summary Judgment

Defendant Jo-Rob challenges Slep-Tone's claim of trademark infringement and unfair competition and moves for summary judgment. (Doc. 31, Motion for Summary Judgment, at ¶ 2). Jo-Rob's Motion for Summary Judgment is due to be granted if the record shows no dispute of material fact exists and it is entitled to judgment as a matter of law. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983). Additionally, all evidence is viewed in the light most favorable to the non-moving party. *Id.* at 655.

#### A. Trademark Infringement

Under the Lanham Act, trademark infringement occurs when a defendant, without the consent of the registered trademark holder, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services . . . likely to cause confusion . . . ." 15 U.S.C. § 1114(1)(a).

Therefore, to establish a claim for trademark infringement, Slep-Tone must show three elements: (1) that it has valid marks entitled to protection under the Act,

(2) that Jo-Rob was not authorized to use those marks, and (3) that this is likely to cause consumer confusion. *See* 15 U.S.C. § 1114(1)(a); *see also Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc.*, 2013 WL 827700 (6th Cir. Mar. 7, 2013). There is no dispute that Slep-Tone's marks are registered with the United States Patent and Trademark office and are, therefore, valid. However, a genuine issue of material fact exists as to whether Jo-Rob was an authorized user of plaintiff's registered trademarks.

Jo-Rob's Motion for Summary Judgment claims that its karaoke equipment and accompanying tracks were purchased legitimately from Star Music, Inc. (Star Music); therefore, it has not engaged in media-shifting or file-sharing that is the target of plaintiff's complaint. (Doc. 31 at ¶ 2; *see* Doc. 31-1, Affidavit of Rob Loboda, at ¶ 3). Plaintiff contends that a reasonable person would have realized that the purchase was not legitimate because the price was greatly reduced compared to the fair market value of Slep-Tone accompaniment tracks. (*See* Doc. 51-1, Decl. of Kurt J. Slep, at ¶ 19). Also, plaintiff submitted the Declaration of Kurt J. Slep, President and Chief Executive Officer of Slep-Tone Entertainment Corporation. (*Id.* at ¶ 1). Mr. Slep's declaration states that Star Music was never an authorized dealer of Slep-Tone accompaniment tracks and that the owner of Star Music, Sonny Freeman, was

charged and convicted of a felony arising from the same type of transaction as the one to which Jo-Rob was a party.  (*Id.* at ¶ 21).

Jo-Rob does not specifically address Mr. Slep's declaration, but reiterates that it reasonably believed it had purchased fully-licensed music. (Doc. 52 at 5). Additionally, the affidavit of Rob Loboda, owner of Jo-Rob, states that Jo-Rob purchased karaoke equipment and music from Star Music and, to his knowledge, no one associated with Jo-Rob engages in illegitimate media-shifting or file-sharing of Sound Choice tracks.  (Doc. 31-1 at ¶¶ 3,4).

Conflicting affidavits that demonstrate facts in dispute between opposing parties "require the Court to step outside its assigned role, and invade the province of the jury." *Aurich v. Thomas*, 2010 WL 667948 (S.D.Fla. Feb. 18, 2010). Additionally, the Supreme Court in *Lobby, supra*, held that "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge. . . ." *Liberty Lobby*, 447 U.S. at 255, 106 S.Ct. At 2513.  A reasonable juror could infer, based upon Kurt Slep's declaration, the conviction of Sonny Freeman, and the reduced price that Jo-Rob paid for the accompaniment tracks, that Jo-Rob's purchase was not legitimate and it was not authorized to use plaintiff's trademarks.  Therefore, a dispute of material fact exists and grant of summary judgment is not appropriate in this case.

### B. Unfair Competition

Jo-Rob's Motion for Summary Judgement also claims that Slep-Tone has failed to state a claim for unfair competition because it has not established facts that show a likelihood of consumer confusion. Unfair competition occurs when a defendant uses any false designation of origin which "is likely to cause confusion . . . , or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). Seven factors are analyzed to determine the likelihood of confusion between two marks: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent, and (7) actual confusion." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997). The court "must take into consideration the circumstances surrounding each particular case" to determine how much evidence of confusion is needed to satisfy the claim. *Id.* at 1382 (citing *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 844 (11th Cir. 1983)).

In the present case, factors one, two, three and four, all support a claim for consumer confusion because the mark Jo-Rob used during its karaoke shows was

allegedly a counterfeit copy of Slep-Tone's original accompaniment tracks. Therefore, the marks are essentially identical. Also, the similarity of what the counterfeit mark represents, as compared to the original mark, is identical. Jo-Rob was using the counterfeit marks during a karaoke show; this is the exact purpose of Slep-Tone's original marks. Lastly, the type of consumers observing the counterfeit mark are identical to the type of consumers that would be observing the original. The Lanham Act's purpose in protecting registered trademark holders against unfair competition "is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct." *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 692 (2d Cir. 1971). In the situation at hand, the unscrupulous commercial conduct would be a KJ using pirated Slep-Tone accompaniment tracks and passing them off as legitimate tracks to the audience, which allows the KJ to compete unfairly in the Birmingham karaoke market.

   As previously discussed, summary judgment is not proper if the non-moving party makes a "showing sufficient to establish the existence of an element essential to that party's case. . . ." *Celotex*, 477 U.S. at 332, 106 S.Ct. At 2552. A reasonable juror could infer, based on the factors discussed above, that Jo-Rob's use of pirated copies of Slep-Tone accompaniment tracks caused consumer confusion as to the

origin of the tracks. Therefore, Jo-Rob's Motion for Summary Judgment is due to be denied.

## II. Joinder

Jo-Rob argues that it was improperly joined in this action and moves to dismiss plaintiff's claims against it on this ground, as well. Rule 21, Fed.R.Civ.P., states that "[m]isjoinder of parties is not a ground for dismissing an action." Therefore, Jo-Rob is not entitled to dismissal of plaintiff's claims against it on the basis of improper joinder. Further, the Court, by separate order, has severed the claims of plaintiff against Jo-Rob from those against the other defendants. Therefore, Jo-Rob's motion to dismiss on this ground is moot.

## CONCLUSION

Based on the foregoing analysis, it is RECOMMENDED that defendant Jo-Rob's motion for summary judgment be DENIED because of the existence of genuine issues of material fact.

## NOTICE OF RIGHT TO OBJECT

The parties are DIRECTED to file any objections to this Report and Recommendation within a period of fourteen (14) days from the date of entry. Any

objections filed must specifically identify the findings in the magistrate judge's recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 18th day of July, 2013.

*[signature]*
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE