
FILED
2014 Feb-14 PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, ) ) ) Plaintiff ) ) vs. ) ) MIKE SHELL, et al., ) ) Defendants ) | Case No. 2:11-cv-03409-HGD |

# REPORT AND RECOMMENDATION

The above-entitled civil action is before the court on Motions to Dismiss, or in the Alternative, Motions for Summary Judgment filed by defendants Andrew Bates and Lynn Bates, proceeding *pro se*. (Docs. 48 & 49). Andrew Bates filed a Motion to Dismiss and accompanying memorandum with respect to plaintiff's original complaint. (Docs. 13 & 14). Plaintiff filed a response. (Docs. 20 & 21). The motion was deemed moot upon the filing of an amended complaint by plaintiff. (*See* Doc. 45, Order). Andrew Bates relies on his initial motion to dismiss and memorandum in his renewed motion to dismiss. Plaintiff has filed a response to the renewed motion to dismiss of Andrew Bates (Doc. 53), in which it relies on its initial response.

No replies have been filed by either Andrew Bates or Lynn Bates.[1]  Because plaintiff has submitted affidavits in opposition to the motions, which will be considered by the court, the motions are considered as motions for summary judgment.  *See* Fed.R.Civ.P. 12(d).

### STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (Dec. 2010).  Defendants Lynn Bates and Andrew Bates, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motions, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).  A genuine issue of material fact is shown when

---

[1] After the motions were filed, the court entered an order providing plaintiff twenty-one (21) days to file a response, with defendants' replies due fourteen (14) days after plaintiff's response. (Doc. 50).  On September 28, 2012, the court notified the parties that the motions had been taken under submission.  (Doc. 55).

the nonmoving party produces evidence so that a reasonable factfinder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. In reviewing whether the non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## FACTUAL BACKGROUND

Plaintiff Slep-Tone Entertainment Corporation (Slep-Tone) is a U.S. manufacturer of karaoke accompaniment tracks, with its principal place of business in Charlotte, North Carolina. (Doc. 43, Amended Complaint, at ¶¶ 6, 20). Defendant

Lynn Bates is an individual engaged in the business of providing karaoke entertainment in Jefferson County, Alabama. (*Id.* at ¶ 10). Defendant Andrew Bates is an individual engaged in the business of providing karaoke entertainment in Jefferson County, Alabama. (*Id.* at ¶ 11). Slep-Tone is the owner of two registered trademarks,[2] one for the trademark Sound Choice and the other for the accompanying display trademark, the Sound Choice logo. (*Id.* at ¶¶ 53, 54). Since the marks have been federally registered, Slep-Tone has provided the public with notice of its federal registrations through consistent display of the symbol ® with its marks. (*Id.* at ¶ 55).

As previously mentioned, Slep-Tone manufactures and sells karaoke accompaniment tracks for commercial use. (*Id.* at ¶ 20). The manufacturing process includes re-recording popular songs without the lead vocals and synchronizing the music to a display of the lyrics that cue the performer as to what and when to sing. (*Id.* at ¶ 21). The tracks are sold on compact discs in one of two formats known as "CD+G" and "MP3G." (*Id.* at ¶ 22). The "G" in both formats refers to the encoding of the recording with graphical data that provides a synchronized video display of the lyrics to the song. (*Id.* at ¶ 22). The graphical data also marks the tracks with the Sound Choice logo which is displayed while the track plays. (*Id.* at ¶ 23). Slep-Tone

---

[2] Slep-Tone is the owner of U.S. Trademark Registration No. 1,923,448 for the trademark Sound Choice and U.S. Trademark Registration No. 2,000,725 for a display trademark, the Sound Choice logo. (Doc. 43, Amended Complaint, at ¶¶ 53, 54).

also marks its compact discs and the associated packaging with the Sound Choice trademarks. (*Id.* at ¶ 24).

Entertainers who provide karaoke services in bars, restaurants or other venues are known as karaoke jockeys (KJs). *(Id.* at ¶ 25). Normally, KJs purchase karaoke equipment and purchase or license the compact discs containing accompaniment tracks that are used for their karaoke business. (*Id.* at ¶¶ 26, 27). However, some KJs copy compact discs containing accompaniment tracks to computer hard drives or other media; this is known as "media-shifting." (*Id.* at ¶ 28). Media shifting can also include converting the compact disc files to different formats, for example from CD+G to MP3G or WAV+G; this is known as "format-shifting." (*Id.* at ¶ 29). Both media-shifting and format-shifting involve the creation of copies of original Slep-Tone material stored on the compact discs. (*Id.* at ¶ 30).

Slep-Tone does not authorize media-shifting or format-shifting without prior consent, and only under specific conditions. (*Id.* at ¶¶ 32, 33). Slep-Tone's complaint alleges that each defendant is in possession of unauthorized media-shifted and/or format-shifted copies of karaoke accompaniment tracks. (*Id.* at ¶ 31). Slep-Tone and its affiliated companies pay royalties to the owners of copyright in the underlying songs that have been re-recorded for the accompaniment tracks. (*Id.* at ¶ 38). Plaintiff's complaint states that the defendants have made illegitimate

commercial use of counterfeit Slep-Tone accompaniment tracks and, therefore, the underlying songs, without paying royalties to the owners of the copyright of those songs. (*Id.* at ¶ 39). Slep-Tone also claims it is being denied the benefit of millions of dollars it has invested in producing karaoke versions of these songs because of widespread use of counterfeit copies of these compact discs. (*Id.* at ¶¶ 32, 33).

Slep-Tone's complaint claims that such widespread copying of music has contributed to the loss of more than 60 jobs, as well as several consecutive years of operating losses. (*Id.* at ¶ 46). Additionally, non-pirated KJs spend thousands of dollars acquiring Slep-Tone accompaniment tracks, while pirate KJs spend much less on the counterfeit copies of the tracks. (*Id.* at ¶¶ 47, 48). This allows the pirate KJs to provide karaoke entertainment at a significantly lower cost because of their lower overhead. (*Id.* at ¶ 48). Therefore, this piracy unfairly increases the profits of illegitimate KJs and decreases the profits of non-pirate KJs, forcing legitimate KJs to turn to piracy. (*Id.* at ¶ 49).

Slep-Tone has conducted an investigation into each defendant and alleges they possessed, used and displayed unauthorized counterfeit tracks bearing Sound Choice marks. (*Id.* at ¶¶ 56, 57). Each of the alleged acts of infringement are in a commercial setting where the defendants were paid for providing karaoke services. (*Id.* at ¶ 61). Slep-Tone further alleges that none of the defendants have submitted

to and passed an audit of their karaoke systems for the purposes of verifying compliance with Slep-Tone's media-shifting policy. (*Id.* at ¶ 65). Additionally, plaintiff argues that each of the defendants knew, or should have known under the circumstances, they obtained and were using counterfeit karaoke tracks. (*Id.* at ¶ 68).

THE MOTIONS FOR SUMMARY JUDGMENT

**Motion of Andrew Bates**

In his motion, Andrew Bates asserts that during expedited discovery conducted on October 4, 2011,[3] it was determined that Andrew Bates neither possessed, nor had available for use, any of Slep-Tone's products, trademarks, words, names or symbols on his karaoke system for commercial use. He avers no files were "called up," opened or played either with or without Bates' permission, contrary to plaintiff's response in opposition to his motion.[4]

**Plaintiff's Response**

Plaintiff asserts that Mr. Bates' statement, that no infringing products were found on his karaoke system, is simply incorrect. Plaintiff has submitted the sworn

---

[3] Expedited limited discovery was granted on plaintiff's motion, of the computer systems of all defendants. The court determined that allowing earlier inspection would eliminate or at least reduce the possibility that evidence might be destroyed or changed, or allow for quick resolution of plaintiff's claims against any defendants who may have committed only a technical infringement and thus streamline the litigation.

[4] It is noted that Bates' response is not in the form of an affidavit or statement sworn ro under penalty of perjury. *See* 28 U.S.C. § 1746

declarations of James M. Harrington and Michael Finch, representatives of Slep-Tone who were present for the review of Mr. Bates' system. According to the declarations, the review conducted showed that Mr. Bates' system as then constituted, while largely devoid of counterfeits of plaintiff's products, did contain several discs' worth of materials that bear the SOUND CHOICE® trademarks. Mr. Bates' system contained copies of materials released promotionally by plaintiff in conjunction with VocoPro, a manufacturer of dedicated karaoke computer equipment. Mr. Bates did not present any SOUND CHOICE® or VocoPro discs for examination and marking; therefore, plaintiff concluded that he did not have the discs for these materials.

While Mr. Bates denied the existence of these materials on his system and has denied owning any SOUND CHOICE®-branded discs, the presence on his computer hard drive of these tracks, which display the trademarks when played, is unexplained. Plaintiff notes that the method of organization of files on Mr. Bates' hard drive may explain why he did not recognize them as SOUND CHOICE® files, as Mr. Bates uses a common method of organization whereby song files are located in folders that include letter designations indicating the manufacturer of a particular disc from which the songs were copied. In that scheme, SOUND CHOICE® discs are usually coded "SC," but the VocoPro promotional discs are instead coded "VPSC," because they are from a different series of catalog numbers. However, the files beginning with VPSC,

when called up, did display the SOUND CHOICE® trademarks. Plaintiff asserts that a more thorough inquiry is need to establish whether Mr. Bates engaged in activity designed to evade detection of infringement upon examination.

**Motion of Lynn Bates**

In her motion, Lynn Bates avers that during the expedited discovery, she attended and made available all personally owned products bearing plaintiff's trademarks and the computer hard drive used in commercial karaoke shows. She further avers that she was informed that she had "passed" the audit, meaning that she was in compliance with plaintiff's policy of requiring a 1:1 relationship between the number of plaintiff's products owned ands the number of karaoke files on her hard drive bearing plaintiff's trademarks.[5]

**Plaintiff's Response**

Plaintiff states that Ms. Bates is correct in stating that the inspection of her computer system and disk holdings revealed a 1:1 correspondence with her disc holdings with respect to the SOUND CHOICE® brand of discs. However, James Harrington has submitted a declaration in which he states that after the inspection, Slep-Tone received information about Ms. Bates from a source who has been only

---

[5] It is noted that Bates' response is not in the form of an affidavit or statement sworn ro under penalty of perjury.  *See* 28 U.S.C. § 1746

moderately cooperative with plaintiff's counsel. The source stated that he had paid Ms. Bates for receiving duplicates of karaoke tracks belonging to Slep-Tone, and that he was aware of others who had done the same. However, due to family illness, the source has been unavailable or unwilling to meet with plaintiff's counsel.

Plaintiff asserts its belief, in the declaration by Mr. Harrington, that further discovery will allow it to present evidence to the court that Ms. Bates has engaged in the wholesale distribution of karaoke tracks belonging to plaintiff and marked with the SOUND CHOICE® marks. However, without that discovery, plaintiff is unable to respond further to the motion for summary judgment, citing Rule 56(d), Fed.R.Civ.P.[6] It thus asks that the court defer a ruling or deny the motion without prejudice pending further discovery.

---

[6] (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1) defer considering the motion or deny it;
    (2) allow time to obtain affidavits or declarations or to take discovery; or
    (3) issue any other appropriate order.

Fed.R.Civ.P. 56(d).

## DISCUSSION

Under the Lanham Act, trademark infringement occurs when a defendant, without the consent of the registered trademark holder, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services . . . likely to cause confusion . . . ." 15 U.S.C. § 1114(1)(a).

Therefore, to establish a claim for trademark infringement, Slep-Tone must show three elements: (1) that it has valid marks entitled to protection under the Act,(2) that defendant was not authorized to use those marks, and (3) that this is likely to cause consumer confusion. *See* 15 U.S.C. § 1114(1)(a); *see also Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc.*, 2013 WL 827700 (6th Cir. Mar. 7, 2013). There is no dispute that Slep-Tone's marks are registered with the United States Patent and Trademark office and are, therefore, valid. However, a genuine issue of material fact exists as to whether defendants were authorized users of plaintiff's registered trademarks.

While defendants have not provided sworn declarations or affidavits in reply to the sworn declarations submitted by plaintiff, the court considers the motions of Andrew Bates and Lynn Bates to assert that they did not have any unauthorized products of Slep-Tone on their karaoke systems. Conflicting affidavits that

demonstrate facts in dispute between opposing parties "require the Court to step outside its assigned role, and invade the province of the jury." *Aurich v. Thomas*, 2010 WL 667948 (S.D.Fla. Feb. 18, 2010).  Additionally, the Supreme Court in *Lobby, supra*, held that "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge. . . ." *Liberty Lobby*, 447 U.S. at 255, 106 S.Ct. At 2513.  A reasonable juror could infer, based upon the declarations submitted by Slep-Tone, that Andrew Bates indeed had SOUND CHOICE ® files on his karaoke system for which he was not an authorized user.  Therefore, a dispute of material fact exists and grant of summary judgment is not appropriate with respect to plaintiff's claims against Andrew Bates.

   As to the motion to dismiss of Lynn Bates, Ms. Bates has stated and plaintiff has agreed that no infringing material was found on her karaoke system or hard drive during preliminary discovery.  However,  plaintiff has demonstrated sufficiently that further discovery is necessary to determine whether the information received from its source, that Ms. Bates sold duplicates of karaoke tracks belonging to Slep-Tone to the source and others, is accurate.  While the statement of Mr. Harrington in his declaration, as to what he was told by an unnamed source, is hearsay,  a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible

form." *See Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1246 (3d Cir. 1993); *Raby v. Baptist Med. Ctr.*, 21 F.Supp.2d 1341, 1353-54 n.9 (M.D.Ala. 1998); *Coker v. Tampa Port Auth.*, 962 F.Supp. 1462, 1466-67 (M.D.Fla. 1997).  If plaintiff is able to provide the affidavit or testimony of the source affirming what was purportedly said to Mr. Harrington, then such evidence would be admissible.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that the motion to dismiss, or in the alternative, for summary judgment of Andrew Bates be DENIED because of the existence of genuine issues of material fact.  It is further RECOMMENDED that the motion to dismiss, or in the alternative, for summary judgment of Lynn Bates be DENIED WITHOUT PREJUDICE because further discovery is needed before plaintiff may respond fully to any motion for summary judgment by Lynn Bates.

## NOTICE OF RIGHT TO OBJECT

The parties are DIRECTED to file any objections to this Report and Recommendation within a period of fourteen (14) days from the date of entry.  Any objections filed must specifically identify the findings in the magistrate judge's

recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 14th day of February, 2014.

                                              HARWELL G. DAVIS, III
                                        UNITED STATES MAGISTRATE JUDGE